USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-19-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE COSME PIZZARO,

                      Petitioner,    :    **REPORT AND**

                                  :    **RECOMMENDATION**

          - against -

                                  :    **07 Civ. 2755 (CM) (RLE)**

DALE ARTUS, Superintendent,
Clinton Correctional Facility,

                    Respondent.

**To the HONORABLE COLLEEN McMAHON, U.S.D.J.:**

## I. INTRODUCTION

*Pro Se* Petitioner Jose Cosme Pizzaro, a New York state prisoner at Clinton Correctional

Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His Petition was mailed on

March 9, 2007, and was received by the *Pro Se* Office in this District on March 15, 2007.

Pizzaro was convicted of four counts of murder in the second degree (N.Y. Penal Law § 125.25),

and sentenced to consecutive and concurrent indeterminate terms in aggregate of seventy-five

years to life.

Pizzaro contends that his incarceration violates the United States Constitution because

the trial court erred in refusing to declare a mistrial based on alleged juror misconduct. (Petition

under 28 U.S.C. § 2254 ("Pet.") at ¶ 10, March 9, 2007.) For the reasons set forth below, I

recommend that the Petition be **DENIED**.

## II. BACKGROUND

### A.    Factual Background

#### 1.    The Crime

On the night of March 2, 2000, Evelyn Garcia was shot, stabbed, and killed in the

elevator in her building. (Trial Transcript ("Tr.") at 221-53, 298, 304.) The following day, the body of Denise Santos, Evelyn's sister, was discovered in her home; she had been stabbed sixteen times. (*Id.* at 253-92, 326-35, 894.) That same day, police also discovered the bodies of Eduardo Santos, Irvin Aquilar, and fourteen-year-old Ishmael Santos, Eduardo's cousin, dead in Eduardo's home. All three had been shot, and Aquilar had also been stabbed. (*Id.* at 51-215, 893-94, 910-11.) All of the shells recovered from the three crime scenes had been fired from the same gun. (*Id.*)

Luis Garcia and Pizzaro were arrested on March 4, 2000, outside of a Florida apartment connected to Garcia. (*Id.* at 452, 461-72, 486-88.) When apprehended, Garcia had two of Denise Santos's credit cards with her blood on them (*Id.* at 510-12, 1280-325). Pizzaro was wearing a watch belonging to Ishmael Santos, and was also wearing a ball of mixed jewelry from the victims on a chain around his neck. (*Id.* at 947, 951-52, 1212-13, 1217-23.) More jewelry from the victims, the gun which had been cut into pieces, and other evidence was found in Garcia's Florida apartment. (*Id.* at 517-28.)

## 2.    The Trial

At Pizzaro's trial, on the second of eleven days of deliberation, Jury Foreperson Peterson, asked to speak to the judge about a "problem with one of the jurors." (*Id.* at 1893.) Peterson stated that juror Christopher Navarro had tried to "bring up information that he learned outside of the trial" (*Id.*) Peterson stated that Navarro said "Louis Garcia was scum and that he was a drug dealer." (*Id.* at 1895.) She further relayed that she "took the initiative to say no we don't want to hear anything about that . . . we didn't allow him . . . we didn't listen to what he had to say." (*Id.*) Peterson also stated that she thought Navarro had heard about Garcia in the newspapers or in the news, and that he had given "a strong impression that he knew [the Santos

2

family] . . . by the information that he was giving[,] the way he was expressing himself as if it was his personal knowledge." (*Id.* at 1898-99.)

When questioned by the trial judge, Navarro denied having heard anything about the case except through the evidence presented and denied having said anything to the other jurors to that effect. (*Id.* at 1905-08.) Navarro told the trial judge that he had a "problem" with four of the other jurors and that one of the jurors had said that they were going to tell the judge that Navarro had "disrespected" them. (*Id.* at 1911-12.) The court decided to ask each juror about any conversation that had occurred. (*Id.* at 1909.) The first two jurors, David Otto and Debra Walker, stated that they had not heard any juror mention having outside knowledge. (*Id.* at 1913-17, 1941-44.) Juror Richard Ostolazo also did not hear anyone say that they had outside knowledge, though he did state that some "personal stuff" had happened between "some ladies and one of the guys." (*Id.* at 1947-49.)

Juror Anna Alvarez told the court that Navarro had said, in general, that he knew more about the case than what was presented, before being silenced by Peterson. (*Id.* at 1927-30.) She also stated that no details about what Navarro knew came out, but that "[h]e knew about what happened back in the year 2000 about the involvement of the two," referring to Pizzaro and Garcia. (*Id.* at 1931.) Juror Cynthia Brown informed the judge that she had "gathered" that "[Navarro] was more or less . . . getting ready to say something . . . as if he had outside information." (*Id.* at 1951.) She further stated that Navarro was talking about a witness changing their testimony and that she assumed that it was about Garcia, but that Peterson had prevented Navarro from talking. (*Id.* at 1952-53.) Juror Julie Roberts stated that she had overheard Navarro mention that he knew what had happened in the Garcia case before deliberations began, but that he had not said anything. (*Id.* at 1958-59.) Juror Pauline Ricketts, Carroll Payne, and Vivian

3

Delgado agreed that Navarro had said, during deliberations, that he knew something, but that he was stopped before he could say what it was. (*Id*. at 1962-63, 1964-65, 1967-69.)

The trial judge elected to question Navarro again after talking to the other jurors. (*Id*. at 1969). Navarro once again denied having outside information (*Id*. at 1969-72), and insisted that the foreperson was not letting him share his opinion of the case during deliberations. (*Id*. at 1979-80). Navarro was called or volunteered to speak to the judge four separate times during the day-long inquiry into his alleged misconduct. (*Id*. at 1978.) The trial judge determined that the jurors' memories about Navarro's statements were "inconsistent" with each other and that most of the jurors had said that Navarro "got stopped before he said anything." (*Id*. at 1989.) The trial judge conceded that there was "a perception common [among the jurors] that [Navarro] was intending to say something about the case," but that the question was whether "each of these jurors, including [Navarro], can make a decision in this case based only on the evidence." (*Id*. at 1997.) All of the jurors agreed that Navarro had not injected outside material into deliberations. (*Id*. at 2000-07, 2010-21.) Further, all of the jurors, including Navarro, agreed that they could remain fair and impartial, and that any statements that may have been made by Navarro would not affect them; that they could render a verdict based on the trial evidence alone. (*Id*.)

**B.   Procedural Background**

Pizzaro was convicted on July 1, 2003, and his conviction was affirmed by the Appellate Division on December 29, 2005. *People v. Pizzaro*, 806 N.Y.S.2d 506 (App. Div. 2005). On appeal, Pizzaro raised two claims: 1) that the trial court erred in refusing to declare a mistrial based on alleged juror misconduct; and 2) that the motion court improperly denied his motion to suppress. In rejecting his claims, the Appellate Division found that there was no factual basis for the claim of juror misconduct and that the motion court had properly denied Pizzaro's motion to

4

suppress. *Id.* at 506. Pizzaro was granted leave to appeal to the New York Court of Appeals on February 28, 2006, and his conviction was affirmed on September 21, 2006. The Court of Appeals held that the Appellate Division's findings were supported by the record. *People v. Pizzaro*, 857 N.E.2d 51, 52 (N.Y. 2006).

Pizzaro's Petition was mailed on March 9, 2007, and was received by the *Pro Se* Office on March 15, 2007. (Affidavit in Opp'n to Pet. for Writ of Habeas Corpus ("Opp'n Aff.") ¶ 10, July 6, 2007, Doc. No. 20.) On September 6, 2007, this Court granted Pizzaro leave to file an amendment to his petition. He amended the petition on October 1, 2007, adding a claim for ineffective assistance of appellate counsel, and requested a stay and abeyance to pursue exhaustion of his new claim in state court. However, in a letter received on December 23, 2009, Pizzaro indicated that he would not be pursuing this additional claim in the state courts, and that the stay was no longer necessary. The Court construed Pizzaro's letter as a motion to withdraw the additional claim, and granted that motion. (Doc. No. 28.) This Report and Recommendation therefore considers only the claim made under the original Petition.

Pizzaro argues that juror misconduct prevented him from receiving a fair trial and that a mistrial should have been declared. He asserts that the trial court should have found the juror grossly unqualified because he lied to the court and was a biased juror. (Reply Affirmation in Response to Opposition for a Writ of Habeas Corpus ("Pet'r Reply") at 9-11, Sept. 14, 2007.) Respondent contends that Pizzaro cannot rebut the "presumption of correctness" that attaches to a trial court's findings of fact, and that Pizzaro has failed to prove actual juror bias. (Opp'n Aff. at 12-13.) ¶

5

## III. DISCUSSION

### A.   Threshold Issues

#### 1.   Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final " 'when [the] time to seek direct review in the United States Supreme Court by writ of certiori expires[s],' " that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Pizzaro's conviction was upheld by the New York Court of Appeals on September 21, 2006. *Pizzaro*, 857 N.E.2d at 51. Pizzaro's original habeas petition was mailed on March 9, 2007 and was received by the *Pro Se* Office of this Court on March 15, 2007, within one year of his conviction becoming final. The Petition is timely.

#### 2.   Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of " 'both the factual and legal premises of the claim [he] asserts in federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

Procedurally, the petitioner must utilize all avenues of appellate review within the state

6

court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.' " *Id.* (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)). Pizzaro appealed his conviction to the Appellate Division and raised two claims; that his motion for a mistrial based on alleged juror misconduct was improperly denied, and that the motion court improperly denied his motion to suppress. *Pizzaro*, 806 N.Y.S.2d at 506. On December 29, 2005, the Appellate Division affirmed his conviction, rejecting each of his arguments. *Id.* The Court of Appeals then considered the denial of Pizzaro's motion for a mistrial. *Pizzaro*, 857 N.E.2d at 51. The Court of Appeals affirmed the findings of the Appellate Division. *Id.* Pizzaro has therefore utilized all avenues of appellate review within the state court system for the claim made to this Court, the claim is constitutional in nature, and he has exhausted his state judicial remedies for that claim.

## B.  Merits of the Claim

### 1.  Standard of Review

The AEDPA constrains a federal court's ability to grant a state prisoner's application for a writ of habeas corpus for claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was so contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 528 U.S. at 413. Furthermore, in cases where the state court

7

decision rests on a factual determination, the federal court must find that the "decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

## 2. Pizzaro's Juror Misconduct Claim

Pizzaro claims that misconduct by Navarro prevented him from receiving a fair trial and that a mistrial should have been declared. He asserts that the trial court should have found Navarro grossly unqualified because he lied to the court and was a biased juror. This claim is meritless. A trial judge has "wide discretion to decide upon the appropriate course to take, in view of his personal observations of the jurors and parties." *United States v. Aiello*, 771 F.2d 621, 629 (2d Cir. 1985). The judge is in "the best position to sense whether the jury is able to proceed properly with its deliberations." *United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990). The judge's determination can only be overturned by a finding of "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984). The Second Circuit has held that "[j]ury bias can be established only if a habeas petitioner demonstrates that 'prejudice [wa]s manifest.' " *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) (quoting *Irvin v. Dowd*, 366 U.S. 717, 724 (1961) (internal quotations omitted). Indeed, "the petitioner must show the 'actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' " *Id.* (quoting *Irvin*, 366 U.S. at 723). Furthermore, "on [a] § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Fama v. Comm'r. of Corr. Services*, 235 F.3d 804, 813 (2d Cir. 2000).

A trial judge may find a juror "grossly unqualified" if it is "obvious that [the] juror possesses a state of mind that would prevent the rendering of an impartial verdict." *People v. Buford*, 506 N.E.2d 901, 905 (N.Y. 1987). A hearing to allow a defendant to prove actual bias is

8

proper in order to ensure the existence of "a jury capable and willing to decide a case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "Due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id*. The Constitution requires that jurors be able to disregard outside information and decide the case solely on the evidence. *Id*. In making its determination, "the trial court must question each allegedly unqualified juror individually." *Buford*, 506 N.E.2d at 905. "In concluding that a juror is grossly unqualified, the court may not speculate as to possible partiality of the juror based on her equivocal responses." *Id*. at 906.

The trial court here acted properly. When the jury foreperson raised the possibility that Navarro had obtained outside information about Garcia, the judge held a hearing to allow Pizzaro to prove actual bias in response to these allegations, and the judge thoroughly questioned the jurors individually about Navarro. The court found that there was no showing of actual bias (Tr. at 2000), and the allegation of outside knowledge about Garcia was found to be unsubstantiated. The judge stated "many of [the jurors] don't think [Navarro] got anything out and the ones who think he did get something out are inconsistent about what it was," (Tr. at 1993). The judge concluded that Pizzaro had failed to show that Navarro was grossly unqualified to continue as a juror. (Tr. at 2025.) The only specific comment that Navarro was alleged to have made was that Garcia, the separately tried co-defendant was "scum and that he was a drug dealer." This statement did not show any prior knowledge and could have been drawn from the testimony given during the trial. *Pizzaro*, 806 N.Y.S.2d at 507. Navarro denied that he had knowledge beyond what was submitted at trial. The judge found this creditable, noting that "inconsistencies among [the other jurors] are[,] as for the specifics of what was said[,] striking." (Tr. at 1997.) Further, even if the court had found that Navarro had possessed outside

9

information, Pizzaro has not shown how that finding would have been contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Navarro's alleged misconduct did not meet the level of misconduct at which other jurors have been found grossly unqualified by trial judges. *See, e.g.*, *People v. Rentz*, 492 N.E.2d 771 (N.Y. 1986) (juror grossly unqualified where the juror had been intimately involved with a witness). However, even when misconduct is more apparent, "each case must be evaluated on its unique facts to determine whether a particular juror must be disqualified." *Buford*, 506 N.E.2d at 905.

The trial judge found, and the Appellate Division and the Court of Appeals concluded based on the record, that there was "merely a misunderstanding between [Navarro], who was trying to express his opinions on the evidence, and some of the other jurors, who mistakenly interpreted his comments as indicating outside knowledge." *Pizzaro*, 857 N.E.2d at 51; *Pizzaro*, 806 N.Y.S.2d at 507. Pizzaro has failed to identify any actual bias. The trial judge made appropriate inquiry into the impartiality of the jury, and the court's determination is entitled to deference. Pizzaro has not shown that the trial court's "decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. CONCLUSION

For the foregoing reasons, I recommend that Pizzaro's petition for writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the

10

Honorable Colleen McMahon, 500 Pearl Street, Room 533, and to the chambers of the

undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals.

*See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) *(per curiam)*; 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ.

P. 72, 6(a), 6(d).

**DATED: May 19, 2010**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

*Pro Se* Petitioner
Jose Cosme Pizzaro
90-T-4034
Livingston Correctional Facility
P.O Box 1991
Route 36 Sonyea Road
Sonyea, NY, 14556

Counsel for Respondent
Lawrence Cunningham
Assistant District Attorney, Appeals Bureau
Office of the District Attorney, Bronx
County
198 East 161st Street
Bronx, NY 10451

11